UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SINNERS AND SAINTS, L.L.C.                    CIVIL ACTION

VERSUS                                        NO: 12-866

NOIRE BLANC FILMS, L.L.C.,                    SECTION: "J"(5)
ET AL.

## ORDER AND REASONS

Before the Court are Defendants' Motion to Dismiss pursuant to Rule 12(b)(6), or alternatively, Rule 12(b)(1) or 12(b)(3) **(Rec. Doc. 34),** Plaintiff's Opposition to Defendants' Motion to Dismiss (Rec. Doc. 35), and Defendants' Reply (Rec. Doc. 38). Defendants' motion was set for hearing on the briefs on August 29, 2012 at 9:30 a.m. For reasons stated more fully below, the Court finds that Defendants' motion **(Rec. Doc. 34)** should be **DENIED**.

### PROCEDURAL AND FACTUAL BACKGROUND

This controversy between Plaintiff, Sinners and Saints, LLC ("SS LLC") and Defendants, Noire Blanc Films, LLC ("Noire Blanc") and Anchor Bay Entertainment, LLC ("Anchor Bay") (collectively "Defendants") arises out of the filming and production of the

motion picture *Sinners and Saints* in various locations throughout the United States, including Louisiana and California. On April 3, 2012, SS LLC filed the instant action against Noire Blanc and Anchor Bay. (Rec. Doc. 1) Plaintiff served Anchor Bay on April 5, 2012, and has not yet served Noire Blanc.[1] (Rec. Docs. 4, 7) SS LLC asserts claims for copyright infringement under the Copyright Act, 17 U.S.C. § 101, <u>et seq</u>., claims for unfair competition and false designation under the Lanham Act, 15 U.S.C. §§ 1051-1141, and claims for unfair trade practices, conversion, and an accounting under Louisiana law. (Supp. Compl., Rec. Doc. 32) SS LLC avers that the Court has original, exclusive jurisdiction over its copyright infringement and Lanham Act claims pursuant to 28 U.S.C. § 1338(a)[2] and supplemental jurisdiction over its related state-law claims for unfair trade practices, conversion, and an accounting. (Supp. Compl., Rec. Doc. 32, p. 1, ¶ 2) SS LLC

---

[1] On April 30, 2012, the summons issued to Noire Blanc was returned unexecuted. (Rec. Doc. 7) The proof of service indicates that SS LLC's attorney attempted to serve the summons on Noire Blanc via certified mail with return receipt requested. (Rec. Doc. 7) However, the summons was returned to her office "unclaimed." (Rec. Doc. 7) SS LLC submitted a summons for issuance on October 4, 2012. (Rec. Doc. 41) However, there is no proof of service in the record.

[2] 28 U.S.C. § 1338(a) provides in pertinent part that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to, *inter alia*, copyrights and trademarks. *No State shall have jurisdiction over any claim for relief arising under any Act of Congress relating to, inter alia, copyrights.*" (alterations added). Although SS LLC asserted supplemental jurisdiction, rather than 28 U.S.C. § 1338(b) as the jurisdictional basis for its unfair competition claims, that section of the statute provides in relevant part that "[t]he district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the *copyright*, patent, plant variety protection or trademark laws." 28 U.S.C. § 1338(b) (emphasis added).

2

also avers that venue is proper in this Court pursuant to 28
U.S.C. § 1391(b),[3] because the production services and production
management for *Sinners and Saints*, which allegedly gave rise to
SS LLC's action, occurred in the Eastern District of Louisiana.
(Supp. Compl., Rec. Doc. 32, p. 1, ¶ 3)

Plaintiff, SS LLC, alleges that it is a Louisiana limited
liability company ("LLC") with its principal place of business in
Louisiana, that Noire Blanc is a California LLC with its
principal place of business in California, and that Anchor Bay is
a Delaware LLC with its principal place of business in Michigan.
(Supp. Compl., Rec. Doc. 32, p. 2, ¶¶ 4-6) SS LLC alleges that it
"is, and at all times relevant to the matters alleged . . . was
engaged in the business of creating, producing, distributing, and
marketing motion pictures intended for commercial exhibition
and/or broadcast through various means." (Supp. Compl., Rec. Doc.
32, p. 2, ¶ 7) SS LLC further alleges that in 2008, it was
"engaged to provide production services and production management
for the motion picture entitled *Sinners and Saints*." (Supp.
Compl., Rec. Doc. 32, p. 2, ¶ 8) SS LLC claims that it employed
many of the above-the-line and below-the-line personnel and many
of the actors and actresses who appeared in *Sinners and Saints*,

---

[3] 28 U.S.C. § 1391(b) provides that, "[a] civil action may be brought in
. . . a judicial district in which a substantial part of the events or
omissions giving rise to the claim occurred, or a substantial part of the
property that is the subject of the action is situated." 28 U.S.C. §
1391(b)(2).

including but not limited to, Tom Banks, the Director of Photography, Mark Clark, the Producer, and over thirty *Sinners and Saints* cast members. (Supp. Compl., Rec. Doc. 32, p. 2, ¶ 9) Plaintiff alleges that each of these personnel executed contracts for the work and/or services provided and that pursuant to agreements with these personnel, SS LLC obtained  the exclusive rights to use each employee's name and likeness in connection with their work in *Sinners and Saints* and became the rightful owner of the results and proceeds of its employees' work. (Supp. Compl., Rec. Doc. 32, p. 2, ¶ 11)

SS LLC asserts that on June 7, 2012,[4] it "properly filed a copyright application for the film *Sinners and Saints*, paid the requisite fees, received confirmation of the filing from the U.S. Copyright Office, and made a complete material deposit as evidenced by Exhibit 1." (Supp. Compl., Rec. Doc. 32, p. 4, ¶ 13) Exhibit 1 to SS LLC's supplemental complaint reflects that on June 7, 2012, SS LLC registered its copyright claim for the motion picture *Sinners and Saints* excluding the "script/screenplay,"  "pre-existing footage," and "preexisting music," but including "additional new footage," "production as a motion picture," and "contribution to pre-existing footage." (Rec. Doc. 32-1)

---

[4] SS LLC filed its copyright application approximately two months after filing the instant lawsuit asserting claims for copyright infringement. (Rec. Docs. 1, 32)

SS LLC alleges that Noire Blanc knowingly and willfully incorporated the results and proceeds of SS LLC's employees' work in *Sinners and Saints* without authorization or written transfer of SS LLC's ownership of the results and proceeds of its employees' work and has infringed copyright to SS LLC's work by selling illegal and unauthorized copies of *Sinners and Saints*, containing the results and proceeds of SS LLC's employees' work. (Supp. Compl., Rec. Doc. 32, p. 4, ¶ 14) SS LLC further alleges that without obtaining SS LLC's consent, Noire Blanc and Anchor Bay "entered into an agreement whereby Anchor Bay agreed to be the exclusive manufacturer, distributor, and marketer of *Sinners and Saints*" and that they are "currently manufacturing, distributing, and/or delivering *Sinners and Saints* through various other mediums." (Supp. Compl., Rec. Doc. 32, p. 4, 16) SS LLC alleges that these activities are directly competitive with SS LLC's commercial plans and activities. According to SS LLC, through these activities, Noire Blanc and Anchor Bay engaged in copyright infringement. (Supp. Compl., Rec. Doc. 32, p. 6, ¶¶ 23-26) SS LLC also contends that Noire Blanc's alleged misappropriation of the results and proceeds of SS LLC's employees' work constituted conversion under Louisiana law. (Supp. Compl., Rec. Doc. 32, p. 7, ¶¶ 27-31) SS LLC also contends that Defendants' alleged conduct constitutes unlawful, unfair, and/or fraudulent business practice in violation of Louisiana

law.[5] (Supp. Compl., Rec. Doc. 32, p. 7-8, ¶¶ 32-36) SS LLC contends that on November 29, 2011, SS LLC's attorney sent Anchor Bay a cease and desist letter advising Anchor Bay of the conflict at issue and also notified Noire Blanc of the allegedly infringing activities. (Supp. Compl., Rec. Doc. 32, p. 4-5, ¶¶ 15, 18)

SS LLC contends that as a direct result of Noire Blanc and Anchor Bay's activities in manufacturing, distributing, and marketing *Sinners and Saints*, it has suffered and will suffer damage in the form of: (1) destruction of the commercial value of its property, (2) lost past and future revenues and profits, (3) injury to its business goodwill and its relationships with current and prospective customers, and (4) lost past and future opportunities to expand its business goodwill. (Supp. Compl., Rec. Doc. 32, pp. 5-6, ¶¶ 19-22, 25) SS LLC contends that it is entitled to the following relief: (1) an order enjoining Defendants, their officers, agents, employees, and all other persons acting in concert with them from manufacturing, advertising, producing, distributing, and placing *Sinners and*

_____

[5] Although SS LLC contends that its action arises under the Lanham Act by virtue of Defendants' unfair competition and false designation in the section of its  portion of its supplemental complaint entitled "Jurisdiction and Venue," it does not specifically devote a section of the supplemental complaint to its Lanham Act claim, like it has for its claim under the Copyright Act and its claims for conversion and unfair trade practices under Louisiana law. (Rec. Doc. 32)

*Saints* on the market,[6] (2) all past and future damages it has sustained or will sustain, including costs and attorneys fees, (3) an accounting of any gains, profits, or advantages Defendants obtained by their alleged acts of infringement, including advances, recoupable costs claimed, royalties, and income information as to all forms of "exploitation of *Sinners and Saints*." (Supp. Compl., Rec. Doc. 32, pp. 6, 8 ¶¶ 24-25, 36, 40-41) SS LLC alleges that although Noire Blanc and Anchor Bay have received substantial amounts of money through the release and sale of the *Sinners and Saints* DVD containing the results and proceeds of SS LLC's employees' work, an accounting is necessary to determine the exact amount of money obtained. (Supp. Compl., Rec. Doc. 32, p. 8, ¶¶ 39-41)

On May 17, 2012, Noire Blanc and Anchor Bay filed their first motion to dismiss, arguing, *inter alia*, that SS LLC's copyright claims should be dismissed on the grounds that SS LLC had failed to allege registration of a copyright — a prerequisite

---

[6] In particular, SS LLC seeks an injunction that: (1) prevents Defendants from continuing to market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop, or manufacture any works derived or copied from the subject work, (2) compels Defendants to return to SS LLC any and all originals, copies, facsimiles, or duplicates of the results and proceeds of SS LLC's employees' work in their possession, custody, or control, (3) compels Defendants to recall from distributors and all others know to Defendants any originals, copies, facsimiles, or supplicates of any works shown by the evidence to infringe upon any work owned by SS LLC, and (4) compels Defendants to deliver upon oath, to be impounded during the pendency of this action and destroyed pursuant to judgment herein, all originals, copies, facsimiles, or duplicates of any work shown by the evidence to infringe on work owned by SS LLC. (Rec. Doc. 32, p. 9, ¶¶ 3-6)

to a copyright infringement claim.[7] (Rec. Doc. 10) On June 14,
2012, SS LLC sought leave to file a supplemental complaint
alleging registration of its copyright with the United States
Copyright Office, which Defendants opposed. (Rec. Docs. 21, 27)
On July 25, 2012, after a hearing, the Magistrate Judge granted
SS LLC's motion, reserving to Defendants the right to supplement
their first motion to dismiss. (Rec. Doc. 31) On August 10, 2012,
a few days after this Court denied the Defendants' first motion
to dismiss as moot in light of the filing of Plaintiff's
supplemental complaint, Defendants filed the instant motion to
dismiss pursuant to Rule12(b)(1) or 12(b)(3), or alternatively,
Rule 12(b)(6). (Rec. Docs. 33, 34)

### PARTIES' ARGUMENTS

Defendants, Noire Blanc and Anchor Bay make the following
arguments in their motion to dismiss:

First, Defendants argue that SS LLC's supplemental complaint
should be dismissed pursuant to either Rule 12(b)(1) for lack of

---

[7] The Defendants also argued in their first Motion to Dismiss that: (1)
the Court should dismiss SS LLC's copyright claims under Rule 12(b)(6),
because SS LLC failed to allege the acts of copyright infringement allegedly
taken with the requisite specificity; and (2) the Court should dismiss SS
LLC's related state-law claims for conversion, unfair competition, and an
accounting pursuant to Rule 12(b)(6), because they were pre-empted by federal
copyright law. Alternatively, Defendants asserted that the Court should
dismiss SS LLC's claims for lack of subject matter jurisdiction under Rule
12(b)(1) or improper venue under Rule 12(b)(3), because SS LLC and Noire Blanc
were parties to a Production Services Agreement ("PSA"), under which SS LLC
and Noire Blanc agreed to submit all disputes arising out of the PSA to
arbitration. (Rec. Doc. 10-1, pp. 3-5) However, the Court did not address all
of these arguments, some of which the Defendants re-urge in the instant
motion, because the Court denied Defendants' motion to dismiss as moot after
SS LLC filed its supplemental complaint. (Rec. Doc. 33)

subject matter jurisdiction or Rule 12(b)(3) for improper venue, because SS LLC and Noire Blanc executed a Production Services Agreement ("PSA") that contains an arbitration provision under which they agreed to arbitrate, rather than litigate their disputes.[8] (Rec. Doc. 34-2, p. 3) Defendants have attached a copy of the PSA as an exhibit to their motion to dismiss. (PSA, Ex. 1 to Def.'s Mot. to Dismiss, Rec. Doc. 34-1) The PSA states that it "is dated as of January 20, 2008," and is signed by Mark Clark ("Clark"), who is designated the "managing member" of SS LLC, and William Kaufman ("Kaufman"), who is designated the "managing member" of Noire Blanc. (PSA, Ex. 1 to Def.'s Mot. to Dismiss, Rec. Doc. 34-1, pp. 1, 13) Defendants have also attached an affidavit from Clark who asserts: (1) that he is a member of SS LLC, (2) that he is the Producer of *Sinners and Saints*, and (3) that he signed the PSA on behalf of SS LLC in November of 2010 after he filed SS LLC's articles of organization and initial report with the Louisiana Secretary of State. (Clark Aff., Ex. 2

---

[8] In its opposition, plaintiff takes issue with defendants' attachment of a copy of the PSA and Mark Clark's affidavit to their motion to dismiss. The plaintiff contends that the Court must either exclude these materials or, if it opts to consider these materials, convert the defendants' motion to dismiss into a motion for summary judgment. As a preliminary matter, the Court dismisses this contention. Generally, if the Court examines extrinsic material when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, it must treat the motion as a Rule 56 motion for summary judgment. Fed. R. Civ. P. 12(d). However, the Court is generally permitted to examine extrinsic materials when considering Rule12(b)(1) or Rule 12(b)(3) motions to dismiss. Mark Clark's affidavit and the PSA bear no relationship whatsoever to the defendant's 12(b)(6) arguments. The Court finds that the Defendants attached these materials as exhibits to their motion exclusively to support their Rule 12(b)(1) and 12(b)(3) arguments based on the arbitration clause in the PSA.

to Def.'s Mot. to Dismiss, Rec. Doc. 34-1, p. 14, ¶¶ 2-4) Clark
further claims that the reason the PSA states that it is "dated
as of January 20, 2008," even though he signed it on SS LLC's
behalf in November 2010, is because it was meant to address
actions that the parties had already taken with respect to
*Sinners and Saints* prior to the date the parties executed the
PSA. (Clark Aff., Ex. 2 to Def.'s Mot. to Dismiss, Rec. Doc. 34-
1, p. 14, ¶ 5) The arbitration clause in the PSA provides in
pertinent part:

> Arbitration. *Any dispute, controversy or claim arising
> out of or relating to this Agreement between the parties
> or their Successors or Affiliates*, if not resolved
> informally between themselves, *shall be conclusively
> determined and settled before a single arbitrator in Los
> Angeles, California in a binding arbitration* in
> accordance with the I.F.T.A. Rules for International
> Arbitration then in effect when the arbitration is filed,
> and if none are in effect, then according to the AAA
> Rules for Commercial Litigation . . .

(PSA, Ex. 1 to Def.'s Mot. to Dismiss, Rec. Doc. 34-1, p. 12, ¶
21) (emphasis added).

> The PSA further provides:

> Any reference to "Affiliate" or "Affiliates" of a party
> means the officers, directors, employees, general and
> limited partners, of such party, as well as any
> corporation, limited liability Production Company,
> partnership or other entity or person that controls, is
> controlled by, or under common control with such party
> ("control" means possession, either directly or
> indirectly, of the power to direct or cause the direction
> of an entity's management or policies, whether through
> the ownership of voting securities, by contract, or
> otherwise.

(PSA, Ex. 1 to Def.'s Mot. to Dismiss, Rec. Doc. 34-1, p. 12, ¶
19)

Based on the foregoing, Defendants contend: (1) that SS LLC entered a valid PSA, (2) that all of SS LLC's claims in its supplemental complaint "arise out of or relate to," the PSA, and (3) that SS LLC is thus required to submit the claims raised in the instant lawsuit to arbitration.[9]

In addition to their 12(b)(1) and/or 12(b)(3) arguments based on the arbitration clause in the PSA, Defendants argue that Plaintiff's copyright infringement claims and state law claims for conversion, unfair trade practices, and an accounting should be dismissed under Rule 12(b)(6). First, Defendants argue that SS LLC's allegation of registration in the supplemental complaint fails to satisfy the registration requirement in § 411(a) of the Copyright Act. In support of this argument, Defendants have attached SS LLC's copyright application as an exhibit to their motion. (Copyright Application, Ex. 3 to Def.'s Mot. to Dismiss, Rec. Doc. 34-1, p. 16). Second, they argue that SS LLC's broad, sweeping allegations in its supplemental complaint are not specific enough to satisfy the pleading requirements for a copyright infringement claim. Third, they argue that SS LLC's state-law claims for conversion, unfair trade practices, and an accounting are pre-empted by federal law.

In its opposition, SS LLC contends it is a Louisiana LLC that was formed on November 24, 2008 to provide production

_____

[9] Def.'s Mot. to Dismiss, Rec. Doc. 34-2, p. 5.

11

financing, production services, and production management for the
Louisiana filming of *Sinners and Saints*. In support of its claim
that it was formed on November 24, 2008, SS LLC has attached
certified copies of all documents on file with the Louisiana
Secretary of State, including SS LLC's Articles of Organization
and Initial Report.[10] (SS LLC Certified Documents, Rec. Doc. 19-
1, p. 2-3). SS LLC asserts that its only members are Daniel
Garcia ("Garcia") and Clark. SS LLC's Articles of Organization
were signed by Garcia only on November 24, 2008. (SS LLC
Certified Documents, Rec. Doc. 19-1, p. 2) SS LLC's initial
report reflects that Garcia was SS LLC's registered agent. (SS
LLC Certified Documents, Rec. Doc. 19-1, p. 3) In addition, SS
LLC's initial report contains a blank space to list the names and
addresses of "the first managers or the members." (SS LLC
Certified Documents, Rec. Doc. 19-1, p. 3) Both Garcia and Clark
are listed in that space without any further designation. (SS LLC
Certified Documents, Rec. Doc. 19-1, p. 3) SS LLC also asserts
that it employed Clark as the *Producer of Sinners* and Saints and

---

[10] The certified documents also include: (1) a letter dated January 5,
2012 from the Louisiana Secretary of State to Garcia notifying Garcia that SS
LLC had failed to file an annual report for three consecutive years and that
SS LLC's articles of organization would be revoked, effective thirty days from
the date of the letter, unless the company placed itself in good standing (SS
LLC Certified Documents, Rec. Doc. 19-1, p. 4), (2) an annual report and
reinstatement signed by SS LLC's attorney on March 23, 2012 requesting that
the SS LLC be reinstated as of the date of receipt of the report and
reinstatement (SS LLC Certified Documents, Rec. Doc. 19-1, p. 3), and (3) a
"Notice of Change" form electronically signed by Clark on April 4, 2012 in
which he changed his address on file with the Louisiana Secretary of State
from a Louisiana address to the California address of his attorney. (SS LLC
Certified Documents, Rec. Doc. 19-1, p. 3)

submitted a Crew Deal Memo executed by Clark to support this
claim. (Clark Crew Deal Memo, Rec. Doc. 19-2) SS LLC asserts that
in addition to being a member of SS LLC and employed by SS LLC as
the Producer of *Sinners and Saints*, Clark is also a member of
Noire Blanc.[11] (SS LLC's Opp., Rec. Doc. 35, p. 3) SS LLC asserts
that most of the Defendants' defenses arise out of an agreement
that Clark allegedly signed on behalf of SS LLC on January 20,
2008, prior to the formation of SS LLC, without Garcia's
knowledge or authorization or a company resolution authorizing
the transfer of SS LLC's rights to the results and proceeds of
its employees' work to Noire Blanc. (SS LLC's Opp., Rec. Doc. 35,
p. 3) In support of these contentions, SS LLC has submitted an
affidavit from Garcia in which he avers: (1) that SS LLC was a
member-managed LLC and that he and Clark were the only two
members, (2) that Clark "allegedly signed a [PSA] on January 20,
2008, on behalf of [SS LLC] prior to the organization of [SS
LLC]," (3) that the results and proceeds of the work performed by
SS LLC's employees constituted "substantially all of the assets
of [SS LLC]," (4) that Clark never consulted him about the PSA he
allegedly signed with Noire Blanc purportedly divesting SS LLC of
all its rights in the results and proceeds of the work performed
by SS LLC's employees, (5) that he did not know of the existence

---

[11] To support this contention, SS LLC has submitted Garcia's
declaration, in which he asserts that Clark is also a member of Noire Blanc.
(Garcia Aff., Ex. 1 to SS LLC's Opp., Rec. Doc. 35-1, p. 2, ¶ 5)

of the PSA Clark allegedly signed until after the institution of the instant lawsuit, (6) that he did not sign an SS LLC resolution authorizing the transfer of SS LLC's rights to the results and proceeds of its employees' work, and (7) that Noire Blanc engaged SS LLC to provide production services for *Sinners and Saints* and that because SS LLC was never paid for the services rendered, SS LLC never transferred any of it rights in the results and proceeds of its employees' work to Noire Blanc. (Garcia Aff., Ex. 1 to SS LLC's Opp., Rec. Doc. 35-1, p. 1, 3-4 ¶¶ 1, 3, 10-13, 15-16)

Based on the foregoing, SS LLC argues that it is not a party to the PSA and that there is thus no valid agreement requiring SS LLC to arbitrate the claims it asserts against Noire Blanc and Anchor Bay in the instant lawsuit. First, SS LLC argues that when Mark Clark "allegedly executed" the PSA on Plaintiff's behalf on January 20, 2008, prior to Plaintiff's formation as an LLC on November 24, 2008, his signature was ineffective to bind SS LLC to the PSA and merely bound Mark Clark personally. Second, SS LLC argues that Clark was never a managing member of SS LLC and, therefore, lacked authority to bind SS LLC to the PSA. Third, SS LLC argues that the PSA is void as to SS LLC, because it constituted a transfer of all or substantially all of SS LLC's assets effectuated without the approval of a majority of SS LLC's two members, as required under Louisiana law. SS LLC also

contends that the claims it has asserted in this lawsuit are outside the scope of the arbitration agreement, because they do not arise out of or relate in any way to the PSA that Clark executed with Noire Blanc.

In response to Defendants' 12(b)(6) arguments, SS LLC asserts in its opposition that registration of a copyright is not a prerequisite to receive copyright protection, and that by filing an application to register its copyright after commencing the instant copyright infringement suit, it has satisfied the registration requirement in § 441(a) regardless of whether the registration is ultimately granted or refused. SS LLC also contends that it continues to enjoy the full protection of copyright related to the results and proceeds of its employees' work, because no valid agreement has been executed on behalf of SS LLC transferring its copyright claim to the results and proceeds of its employees' work. SS LLC contends that its claim for conversion is founded on supplemental jurisdiction, because it is directly related to the copyright infringement claim, which provides original jurisdiction. However, SS LLC also asserts that it is asserting copyright infringement and conversion claims in the alternative, and that in the event that the court finds a copyright infringement claim does not lie, the Court still has diversity jurisdiction over the suit. SS LLC also asserts that its state law claim for unfair trade practices are not pre-

empted. SS LLC contends that the Fifth Circuit has developed a test to analyze pre-emption claims based on the Copyright Act, which is commonly referred to as the "extra element" test. SS LLC asserts, relying on Dorsey v. Money Mack Music, Inc., 304 F. Supp. 2d 858, 864 (E.D. La. 2005), that under this test:

> if the act or acts of [the defendant] about which [the plaintiff] complains would violate both [state law] and copyright law, then the state right is deemed 'equivalent to copyright.' If, however, one or more qualitatively different elements are required to constitute the state-created cause of action being asserted, then the right granted under state law does not lie 'within the general scope of copyright,' and preemption does not occur.

SS LLC asserts that, under this test, its claim under the Louisiana Unfair Trade Practices Act ("LUTPA") is not preempted, because to recover under LUTPA, a plaintiff must prove "fraud, misrepresentation, or other unethical conduct," which constitutes an "extra element," differentiating a copyright claim from a LUTPA claim. SS LLC also argues that its claim for an accounting is not preempted. SS LLC argues that "[b]ecause it has alleged that Defendants are violating copyright by selling copies of [*Sinners and Saints*] containing the results and proceeds of [SS LLC's] employee's [sic] work, [SS LLC] is entitled to discover whatever profits the infringers have obtained through an accounting." (SS LLC's Opp., Rec. Doc. 35, p. 14) SS LLC contends that under the Copyright Act, it is entitled to recover the actual damages it suffered as a result of the infringement and any profits the infringer obtained through the infringement. SS

16

LLC contends that the purpose of the accounting is to determine the exact amount of money Defendants received by "exploiting" *Sinners and Saints*. SS LLC argues that the Court may combine this form of equitable relief with a judgment. Finally, SS LLC requests that the Court grant it an opportunity to amend its complaint to overcome any pleading defect(s) if the Court grants Defendants' motion.

In their reply, Defendants argue that there is no dispute that the terms of the PSA require SS LLC's claims to be arbitrated rather than litigated. They contend that the only dispute is whether the PSA is valid and that the only evidence on this point is the PSA itself and Clark's affidavit. Defendants contend that the PSA states, in precise language, that it is "dated as of January 20, 2008," while Clark's affidavit states that the PSA was signed in November of 2010, and back-dated because the PSA was meant to address actions that the parties had already taken with respect to *Sinners and Saints* prior to the date the parties executed the PSA. Defendants assert that there is no evidence rebutting Clark's assertion in his affidavit that he signed the PSA in November of 2010. Defendants also contend that Clark, as a member of SS LLC, was authorized to sign the PSA in November of 2010, because SS LLC's articles of organization neither limit the authority of members to bind the LLC nor state that the LLC will be manager-managed. Defendants contend that

because SS LLC admits that Clark is a member, Clark can manage SS
LLC and was authorized to sign the PSA. Defendants contend,
citing multiple Fifth Circuit authorities, that challenges to the
validity of a contract as a whole are subject to arbitration
while challenges to the validity of an arbitration clause in a
contract are to be decided by the courts. According to
Defendants, SS LLC's claim that the PSA is invalid, because SS
LLC was not in existence when Clark signed the PSA, is an attack
on the PSA as a whole, not the arbitration clause in the PSA.
Therefore, Defendants contend that SS LLC's claims must be
arbitrated rather than litigated.

Defendants further contend that Plaintiff's copyright
infringement claim should be dismissed, because Plaintiff has not
registered a copyright for *Sinners and Saints*. Defendants assert
that although Plaintiff has filed *something* with the U.S.
Copyright office, what it filed was not a claim for copyright of
*Sinners and Saints*, but copyright of *Sinners and Saints*,
excluding the "script/screenplay, preexisting footage, [and]
preexisting music." Defendants contend, relying on <u>Richlin v.
Metro-Goldwyn-Mayer Pictures, Inc.</u>, 531 F.3d 962, 975 (9th Cir.
2008), that SS LLC's copyright registration does not satisfy 17
U.S.C. 411(a)'s registration requirement, because "it is
impossible to cleave the story, screenplay and musical score of a
motion picture film from the film itself." (Def.'s Reply, Rec.

18

Doc. 36-1, p. 5) Defendants also contend that SS LLC is not, as
it contends in its opposition, a co-owner of copyright in *Sinners
and Saints*, because the PSA states that Noire Blanc is the
"Owner" and provides that "Owner [is] designated as sole
copyright claimant" and that "Owner shall be ab initio the
author, producer and copyright proprietor." Defendants further
assert that if SS LLC is a co-owner, they cannot state a claim
for infringement, because a co-owner of a copyright cannot be
liable to another co-owner for copyright infringement. They
further assert that plaintiff's conversion claim is preempted
under 17 U.S.C. § 301(a).

### DISCUSSION

As a preliminary matter, Defendants styled their motion to
dismiss based on the arbitration clause in the PSA as a Rule
12(b)(1) *or* Rule 12(b)(3) motion to dismiss. This raises the
threshold question whether a motion to dismiss based on an
arbitration clause should properly be considered as a Rule
12(b)(1) motion to dismiss for lack of subject matter
jurisdiction, or as a Rule 12(b)(3) motion to dismiss for
improper venue.[12]

_____

[12] The procedural posture also raises the question whether Defendants
should have raised the arbitration issue through one of the procedural
vehicles provided in the Federal Arbitration Act ("FAA"), such as a petition
to compel arbitration or a motion to stay the proceedings pending arbitration.
Section 4 of the FAA provides in pertinent part that a party aggrieved by the
alleged failure, neglect, or refusal of another to arbitrate under a written
agreement for arbitration may petition any United States district court which,
save for such agreement, would have jurisdiction under Title 28, in a civil

Circuits are split on the issue of whether Rule 12(b)(1) or 12(b)(3) is the proper motion for seeking dismissal based on a forum-selection or arbitration clause. Lim v. Offshore Specialty Fabricators, Inc., 404 F.3d 898, 902 (5th Cir. 2005). The Fifth Circuit has not definitively decided whether Rule 12(b)(1) or Rule 12(b)(3) is the proper vehicle for a motion to dismiss based on an arbitration clause. Noble Drilling Servs., Inc. v. Certex USA, Inc., 620 F.3d 469, 472, n. 3 (5th Cir. 2010) (noting that "[o]ur Court has not previously definitively decided whether Rule 12(b)(1) or Rule 12(b)(3) is the proper rule for motions to dismiss based on an arbitration or forum-selection clause") (alterations added) (citations omitted). Nevertheless, the Fifth Circuit has noted that arbitration clauses are indistinguishable from forum-selection clauses for enforceability purposes and has analyzed motions to dismiss based on arbitration clauses under Rule 12(b)(3). Id.; Lim, 404 F.3d at 902 (analyzing motion to dismiss based on an arbitration clause under Rule 12(b)(3) and observing that "other circuits agree that a motion to dismiss based on an arbitration or forum selection clause is proper under

_____

action . . . of the subject matter of the suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. 9 U.S.C. § 4. Section 3 of the FAA permits a party to a district court suit to apply for a stay of the proceedings upon any issue that the party believes to be referable to arbitration under a written arbitration agreement, provided that the party is not in default in proceeding with such arbitration. See 9 U.S.C. § 3. Nevertheless, as SS LLC has not challenged the procedural vehicle Defendants' invoked to raise the arbitration issue, the Court will not address this question.

Rule 12(b)(3)"); <u>See</u> <u>Haynsworth v. The Corporation</u>, 121 F.3d 956, 961 (5th Cir. 1997).[13] Because the Fifth Circuit has endorsed Rule 12(b)(3) as the proper vehicle to seek dismissal based on either an arbitration or forum-selection clause, the Court will treat Defendants' motion as a 12(b)(3) motion to dismiss for improper venue.[14]

Both parties have submitted evidence beyond the complaint in connection with Defendants' motion. On a Rule 12(b)(3) motion to dismiss for improper venue, the court may consider, in addition to the complaint and its proper attachments, other evidence in

---

[13] Although the Fifth Circuit has implicitly accepted 12(b)(3) as a proper vehicle for dismissal based on both forum-selection clauses and arbitration clauses by considering arbitration clauses a subset of forum-selection clauses, there is one significant difference between allowing parties to proceed under 12(b)(3) when they are enforcing arbitration clauses rather than forum-selection clauses. Parties trying to enforce forum-selection clauses have no alternative but to choose between a variety of procedural options that are not quite appropriate, because federal law does not provide a motion expressly designed for forum-selection clause enforcement. <u>Steward v. Up North Plastics, Inc.</u>, 177 F. Supp. 2d 953, 957 (D. Minn. 2001); <u>McCloud Const., Inc. v. Home Depot USA, Inc.</u>, 149 F. Supp. 2d 695, 697 (E.D. Wis. 2001). However, at least in cases that are governed by the FAA, federal law provides two procedural vehicles that are expressly designed for arbitration clause enforcement, the petition to compel arbitration and the motion to stay pending arbitration. <u>See</u> 9 U.S.C. §§ 3-4.

[14] In addition, considering that SS LLC is asserting a claim under the Copyright Act, and that 28 U.S.C. § 1338(a) vests *exclusive* jurisdiction over any civil action arising under any federal statute relating to copyrights in the federal district courts, the Court questions whether the mere fact that a dispute is referable to arbitration can divest the court of subject matter jurisdiction. <u>See</u> <u>New Process Steel Corp. v. Titan Indus. Corp.</u>, 555 F. Supp. 1018 (S.D. Tex. 1983) (granting a motion to stay pending arbitration and denying a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based on an arbitration clause and remarking that  "there is no basis in the case law to support the defendants' assertion that simply because a matter may be referable to arbitration, the Court is deprived of jurisdiction" where the plaintiff's complaint sufficiently alleged diversity jurisdiction). <u>But</u> <u>see</u> <u>Davis v. Houston Lighting & Power</u>, 990 F. Supp. 515 (S.D. Tex. 1998) (asserting that if a plaintiff's claims under federal employment law are within the scope of the arbitration clause, the issues are private contractual matters, and the court *lacks subject matter jurisdiction*) (emphasis added).

the record. <u>Ambraco, Inc. v. Bossclip B.V.</u>, 570 F.3d 233, 238
(5th Cir. 2009) (citations omitted). "On a Rule 12(b)(3) motion
to dismiss for improper venue, the court must accept as true all
allegations in the complaint and resolve all conflicts in favor
of the plaintiff." <u>Braspetro Oil Servs. Co. v. Modec (USA), Inc.</u>,
240 F. App'x 612, 615 (5th Cir. 2007) (citing <u>Murphy v. Schneider
Nat'l, Inc.</u>, 362 F.3d 1133, 1138 (9th Cir. 2004)).[15] The Court
notes that both <u>Braspetro Oil Services Co.</u> and <u>Murphy</u>, involved
12(b)(3) improper venue motions predicated on forum-selection
clauses, not arbitration clauses. In fact, the Ninth Circuit's
narrow holding in <u>Murphy</u>, which the Fifth Circuit relied on in
<u>Braspetro Oil Services Co.</u>, was that "*in the context of a Rule
12(b)(3) motion based upon a forum selection clause*, the trial
court must draw all reasonable inferences in favor of the non-
moving party and resolve all factual conflicts in favor of the
non-moving party." <u>Id.</u> (emphasis added) Nevertheless, given that
the Fifth Circuit has treated forum-selection clauses as
indistinguishable from arbitration clauses,[16] and that the

_____

[15]) In <u>Murphy</u>, the Ninth Circuit framed the issue as whether, in the
context of a 12(b)(3) motion, the Court (a) is required to view disputed facts
in the light most favorable to the non-moving party or (b) is permitted to
weigh the competing evidence and make factual findings to resolve the conflict
on the impact of a forum selection clause. <u>See</u> <u>id.</u> There, the plaintiff trying
to avoid a forum selection clause presented affidavit evidence that
enforcement of the forum selection clause would deprive him of his day in
court, because of his financial and physical limitations. <u>Id.</u> The plaintiff's
affidavit was controverted by the Defendant's submission of medical records
that cast doubt on the scope of the plaintiff's asserted disability. <u>Id.</u>

[16] <u>See</u> <u>e.g.</u>, <u>Noble Drilling Servs., Inc.</u>, 620 F.3d at 472 n. 3; <u>Lim</u>, 404
F.3d at 902.

reasoning that informed the <u>Murphy</u> holding  is equally applicable in the context of a Rule 12(b)(3) motion based upon an arbitration agreement,[17] for purposes of this motion, the Court will accept all of SS LLC's allegations in its supplemental complaint as true and resolve all factual conflicts in SS LLC's favor.

To determine whether parties should be compelled to arbitrate a dispute, courts perform a two-step inquiry. <u>Will-Drill Res., Inc. v. Samson Res. Co.</u>, 352 F.3d 211, 214 (5th Cir. 2003).  "'First, the court must determine whether the parties agreed to arbitrate the dispute.'" <u>Id.</u> (quoting <u>R.M. Perez & Assocs., Inc. v. Welch</u>, 960 F.2d 534, 538 (5th Cir. 1992)). In making this initial inquiry, the court must determine: "'(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'" <u>Will-Drill Res., Inc.</u>, 352 F.3d at 214 (quoting <u>Am. Heritage Life Ins. Co. v. Lang</u>, 321 F.3d

---

[17] The Ninth Circuit explained, relying on the Second Circuit's decision in <u>New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG</u>, 121 F.3d 24, 29 (2d Cir. 1997), that because the effect of granting a 12(b)(3) motion is to deprive the plaintiff of his or her choice of forum, the party seeking to avoid enforcement is "'entitled to have the facts viewed in the light most favorable to it," and should not have disputed facts resolved against it until it has had an opportunity to be heard. <u>Id.</u> at 1139. The Ninth Circuit also noted that its approach was consistent with its approach to other Rule 12(b) motions. <u>Id.</u> Most importantly, the Ninth Circuit observed that since Rule 12(b)(3) motions are typically made early in litigation when the factual record is undeveloped and granting the motion would terminate the case in the selected forum, the non-moving party is entitled to remain in its selected forum if the facts it asserted are sufficient to preclude enforcement of the forum selection clause, unless and until the district court has resolved any material factual issues that are in genuine dispute. <u>Id.</u>

533, 538 (5th Cir. 2003)). "In determining whether an agreement to arbitrate exists, [courts] apply 'ordinary contract principles.'" <u>Will-Drill Res., Inc.</u>, 352 F.3d at 214 (quoting <u>Fleetwood Enters. Inc. v. Gaskamp</u>, 280 F.3d 1069, 1073 (5th Cir. 2002)). It is "well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." <u>Granite Rock Co. v. Int'l Brotherhood of Teamsters, et al.</u>, 130 S. Ct. 2847, 2847 (2010) (citing <u>First Opticians of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995)). If the court determines that the parties agreed to arbitrate the dispute, the Court then considers the second step of the inquiry, "'whether any federal statute or policy renders the claims nonarbitrable.'" <u>Will-Drill Res., Inc.</u>, 352 F.3d at 214 (quoting <u>R.M. Perez & Assocs., Inc.</u>, 960 F.2d at 538). "Although there is a strong federal policy favoring arbitration, 'this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" <u>Will-Drill Res., Inc.</u>, 352 F.3d at 214 (quoting <u>Fleetwood Enters. Inc.</u>, 280 F.3d at 1073).

The Defendants argue that all of SS LLC's claims must be submitted to arbitration, because SS LLC and Noire Blanc executed a valid and enforceable PSA that requires SS LLC to submit all of its claims to arbitration in California. They further argue, relying on <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388

U.S. 395 (1967), <u>Brown v. Pacific Life Ins. Co.</u>, 462 F.3d 384
(5th Cir. 2006), and <u>Primerica Life Ins. Co. v. Brown, 304 F.3d
469 (5th Cir. 2002)</u>, that "any argument" against the validity of
the PSA is an attack against the entire contract between SS LLC
and Noire Blanc, not just on the arbitration clause in the PSA
and, as such, must be submitted to arbitration. Defendants assert
that these authorities stand for the  proposition that the
Federal Arbitration Act requires all attacks on the *validity of
the entire contract* between the parties to be submitted to the
arbitrator, while permitting the federal courts to decide only
*specific attacks to the validity of the arbitration agreement*.
Defendants characterize SS LLC's various claims as a claim that
the entire PSA between SS LLC and Noire Blanc is void for "lack
of capacity to contract," and assert that any doubt about whether
the PSA is binding on SS LLC is for the arbitrator, rather than
this Court, to decide. Defendants also point out, citing <u>Sherer
v. Green Tree Servicing LLC</u>, 548 F.3d 379, 381 (5th Cir. 2008),
that there is a federal policy favoring arbitration and that
Plaintiff only raises claims "arising out of or relating to" the
PSA, which, pursuant to the language of the arbitration clause,
must be raised in arbitration rather than litigation.

    The Court is not convinced. Although Defendants are correct
that there is a federal policy favoring arbitration, that policy
does not bear on the threshold question of whether the parties

agreed to arbitrate the dispute. Moreover, the Court finds there is an issue in this case as to whether an agreement to arbitrate exists between SS LLC and Noire Blanc. SS LLC is asserting that it is neither a party to nor bound by the PSA that contains the arbitration clause, because its agent — Clark — acted outside of the scope of his authority in signing it. SS LLC's argument is based on the following uncontroverted allegations that Garcia makes in his affidavit: (1) that SS LLC was a member-managed LLC, (2) that he and Clark were the only two members of SS LLC, (3) that the results and proceeds of the work performed by SS LLC employees constituted substantially all of SS LLC's assets, (4) that Clark never consulted him about the PSA he signed with Noire Blanc which purports to divest SS LLC of all of its rights in the results and proceeds of its' employees work, and (5) that he did not sign any resolution authorizing the transfer of the results and proceeds of SS LLC's right to the results and proceeds of its employees' work. Based on this, SS LLC contends that it is not a party to the PSA and that there is no valid agreement requiring SS LLC to arbitrate the claims it asserts against Noire Blanc and Anchor Bay in this lawsuit, because the PSA constituted a transfer of all or substantially all of SS LLC's assets effectuated without the approval of a majority of SS LLC's two members, as required under Louisiana law. Under <u>Will-Drill Resources</u>, SS LLC's claim is properly characterized as a

challenge to the very existence of an arbitration agreement that
is properly decided by this Court, not the arbitrator:

> [I]t is clear that because arbitration is a matter of
> contract, where a party contends that it has not signed
> any agreement to arbitrate, the court must first
> determine if there is an agreement to arbitrate before
> any additional dispute can be sent to arbitration. *We
> agree with those circuits which have included claims that*
> the signature is forged or *the agent lacked authority to
> bind the principle [sic] in this category.*

Will-Drill Resources, 352 F.3d at 218 (citing Jolley v. Welch,

904 F.2d 988, 993-94 (5th Cir. 1990); Sphere Drake Ins. Ltd. v.

All Am. Ins. Co., 256 F.3d 587 (7th Cir. 2001); Sandvik AB v.

Advent Int'l Corp., 220 F.3d 99 (3d Cir. 2000); Three Valleys

Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136 (9th Cir.

1991); Snowden v. CheckPoint Cashing, 290 F.3d 631, 637 (4th Cir.

2002)) (emphasis added).

    In the very next sentence of its opinion, the Will-Drill

Resources court distinguished Primerica Life Ins. Co., and Prima

Paint Corp. on the ground that they involved situations where the

parties formed an agreement which contains an arbitration clause

and later attempted to contest its continued validity or

enforcement:

> On the other hand, *where parties have formed an
> agreement which contains an arbitration clause*, any
> attempt to dissolve that agreement by having the entire
> agreement declared voidable or void is for the
> arbitrator. Only if the arbitration clause is attacked
> on an independent basis can the court decide the

27

> dispute; otherwise general attacks on the agreement are
> for the arbitrator.

Will-Drill Resources, 352 F.3d at 218 (citing Primerica Life Ins.

Co. v. Brown, 304 F. 3d 469 (5th Cir. 2002); Prima Paint Corp. v.

Flood & Conklin Mfg. Co., 388 U.S. 395 (1967)).

In this case, there is an unresolved threshold question
about whether SS LLC and Noire Blanc ever formed an agreement
containing an arbitration clause. To decide this threshold
question, the Court must determine whether Clark exceeded the
scope of his authority when he executed the PSA on behalf of SS
LLC. Since SS LLC is a Louisiana LLC, the Court looks to
Louisiana law in determining the extent of Clark's authority to
bind SS LLC to the PSA. Under Louisiana law, in a member-managed
LLC, each member is a mandatary of the LLC for all matters in the
ordinary course of its business,[18] unless: (1) such mandate is
restricted or enlarged in the LLC's articles of organization or
(2) the member lacks the authority to act for the LLC, and the
person with whom he is dealing knows that he lacks authority. La.
R.S. 12:1317(A). However, a majority vote of the members shall be
required to approve the sale of all or substantially all assets
of the LLC, unless otherwise provided in the LLC's articles of
organization or a written operating agreement. La. Rev. Stat.
12:1318(B)(2). Each member of an LLC is entitled to cast a single

---

[18] There is an exception to this rule for the alienation, lease, or
encumbrance of immovables. La. R.S. 12:1317(A).

28

vote on all matters properly brought before the members, unless otherwise provided in the articles of organization or a written operating agreement. La. R.S. 12:1318(A). At present, the Court finds that there are factual issues bearing on whether Clark exceeded the scope of his authority in executing the PSA, which preclude the Court from granting Defendants' 12(b)(3) motion to dismiss based on the arbitration clause in the PSA. Moreover, until the Court has resolved the factual issues bearing on whether SS LLC and Noire Blanc formed a valid agreement to arbitrate, the Court cannot address the merits of the Defendants' arguments in their 12(b)(6) motion. Accordingly,

**IT IS HEREBY ORDERED** that the Defendants' 12(b)(3) motion to dismiss for improper venue and 12(b)(6) motion to dismiss for failure to state a claim are **DENIED** without prejudice to Defendants' right to re-urge the motions after conducting discovery limited to the question of whether SS LLC and Noire Blanc formed an agreement to arbitrate.

**IT IS FURTHER ORDERED** that this matter is referred to the Magistrate Judge for discovery on this question.

New Orleans, Louisiana, this 29th day of March, 2013.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE